# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-1008

THE COLORADO COALITION FOR THE HOMELESS, a Colorado Nonprofit Corporation

    Plaintiff,

v.

GENERAL SERVICES ADMINISTRATION,

And

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

    Defendant(s).

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

This is a new civil cause of action for declaratory and injunction relief in an ongoing dispute between The Colorado Coalition for the Homeless and the General Services Administration ("GSA") that first came before this Court in the case *The Colorado Coalition for the Homeless v. General Services Administration and United States Department of Housing and Urban Development*, Civil Action No 17-cv-01797-WJM-KLM. In the original case, Judge William J. Martinez issued a Temporary Restraining Order on July 26, 2017 preventing Defendant GSA from accepting any bid or otherwise disposing the 59 acre parcel known as the Federal Center Station in Lakewood, Colorado (the "Surplus Property") to preserve Plaintiff's

claim to acquire the Surplus Property to assist the homeless pursuant to Title V of the Stewart B. McKinney Homeless Assistance Act (McKinney Act).

The Court's Temporary Restraining Order found that Plaintiff demonstrated a substantial likelihood of success on the merits under the Administrative Procedures Act in its claim that HUD's determination that the federally owned Surplus Property was not suitable for use to assist the homeless due to environmental issues, while GSA was auctioning the property as a transit oriented development for market rate uses, was arbitrary and capricious. The Court further found that Plaintiff would suffer irreparable injury if the GSA auction was permitted to conclude.

On August 7, 2017, the parties submitted a Joint Motion to Stay Proceedings to provide time for the United States Department of Housing and Urban Development ("HUD") to reconsider its determination that the Surplus Property was "unsuitable" for use to assist the homeless.

On August 8, 2017, Judge Martinez issued an order granting a stay of proceedings upon a Joint Motion staying the action pending a review by HUD of its determination of unsuitability of the Surplus Property to assist the homeless, and ordering the GSA not to dispose of the Surplus Property before October 16, 2017.

Pursuant to that order, the parties submitted a joint status report on September 25, 2017, informing the Court that HUD had issued written notice of its reconsideration of the original determination respecting the Surplus Property, that its reconsidered determination was that the Surplus Property is "suitable" for use to assist the homeless, and that GSA was taking steps to cancel the auction of the Surplus Property until an appropriate determination by the U.S.

Department of Health and Human Services ("HHS") and GSA respecting utilization of the Surplus Property in accord with the McKinney Act.

The Court issued an Order on September 26, 2017 requiring the parties to file a further joint status report no later than October 31, 2017. In accordance with that order, the parties submitted a joint status report advising that:

1. On October 2, 2017, GSA cancelled the disposal sale of the Surplus Property.

2. On October 6, 2017, HUD published its formal suitability determination.

3. Defendants filed a motion to dismiss the action as moot, which Plaintiff indicated to the U.S. Attorney's office that it did not plan to join nor oppose.

The Court issued an Order on November 1, 2017 requesting Plaintiff's response to certain assertions in the Government's Motion to Dismiss.

On November 8, 2017, Plaintiff submitted its Response to the Court Order detailing its concerns that the actions of Defendants in re-determining the suitability of the Surplus Property for Homeless use and cancelling the auction did not provide a final resolution of the underlying cause of action or any subsequent relief that Plaintiff might request based on the Government's continuing actions concerning its requirements under Title V of the McKinney Act.

Plaintiff further contended that given the vagueness of the standards of review by HHS on an application to acquire the property, denial of Plaintiff's application by HHS would leave Plaintiff in the same position it was in when the initial complaint and motion for injunctive relief was filed – i.e. with GSA auctioning the property and Plaintiff without the ability to acquire it pursuant to Title V.

On November 14, 2017, the Defendants submitted a Reply in Support of Motion To Dismiss as Moot.

On November 20, 2017, Judge Martinez issued an Order granting the Motion to Dismiss WITHOUT PREJUDICE, noting that "Moreover, the Court emphasizes that, although Plaintiff disagrees with the Government's analysis of mootness and voluntary cessation, Plaintiff still does not oppose the Government's motion."

## COMPLAINT

Now comes The Colorado Coalition for the Homeless, a Colorado nonprofit corporation, which hereby brings this new complaint against the General Services Administration ("GSA") and the United States Department of Health and Human Services ("HHS") for violating their statutory and regulatory requirements pursuant to 42 U.S.C. § 11301 *et seq.,* and § 11411 et seq., Title V of the Stewart B. McKinney Homeless Assistance Act ("McKinney Act"). Title V requires, among other things, that 1) HHS shall review and make determinations on initial applications for acquisition and use of federal surplus properties to assist the homeless; 2) if HHS approves an initial application, the applicant has 45 days in which to provide a final application that sets forth a reasonable plan to finance the approved program; and 3) HHS shall make a final determination of the application.

Plaintiff contends that, after receiving approval by HHS of its initial application for use of the surplus property to assist the homeless, and submitting a timely final application setting forth a reasonable plan to finance the approved program, HHS denied its final application in an arbitrary and capricious manner in violation of Title V of the McKinney Act and the Administrative Procedures Act ("APA") 5 U.S.C. § 706.

Plaintiff further contends that GSA acted in an arbitrary and capricious manner in interfering in HHS's review of Plaintiff's application, and in prematurely putting the Surplus Property back up for auction prior to Plaintiff having an opportunity to appeal or challenge HHS's denial of Plaintiff's application.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343, and pursuant to review under the Administrative Procedure Act, 5 U.S.C. § 702, *et seq.*

2. Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b) because Plaintiff and the property subject to dispute are located within this District.

## PARTIES

3. Plaintiff, The Colorado Coalition for the Homeless ("CCH"), is a nonprofit corporation organized under the laws of the state of Colorado, whose mission is to work collaboratively toward the prevention of homelessness and the creation of lasting solutions for homeless individuals and families throughout Colorado. CCH provides integrated health care, supportive housing, emergency assistance, counselling and support to more than 15,000 unique homeless and at-risk families and individuals each year. CCH also represents homeless families and individuals who are negatively affected by the action of Defendants failure to follow the legal and regulatory requirements of Title V of the McKinney Act.

4. Defendant General Services Administration (GSA) is an agency of the United States government which owns and manages real estate assets of the United States including the Denver Federal Center in Lakewood, Colorado and a 59 acre parcel known as the Federal Center Station

(the Surplus Property). GSA has resumed its public auction of the Surplus Property as of April 2, 2018.

5. Defendant United States Department of Health and Human Services (HHS) is an executive department of the United States Government whose responsibilities, among others, include receiving applications for acquisition of federal surplus properties to determine whether such applications meet the criteria of services offered, need, implementation time, experience, and financial capacity to use properties to assist the homeless pursuant to Title V of the McKinney Act 42 U.S.C. § 11411 *et seq.*

## NATURE OF ACTION

6. Plaintiff brings this action pursuant to Title V of McKinney Act 42 U.S.C. § 11411*et seq.* and the Administrative Procedures Act ("APA") 5 U.S.C. § 706 for defendants' arbitrary and capricious actions in their failure to appropriately review and approve Plaintiff's application to acquire the Federal Center Station Surplus Property to assist the homeless in accordance with its evaluation and review criteria in violation of Act 42 U.S.C. § 11411 *et seq.* and regulations under 45 CFR Part 12a *et seq.*

7. Plaintiff further contends that Defendant HHS failed to provide Plaintiff's due process and acted in an arbitrary and capricious manner in its failure to treat Plaintiff's application similarly to those of other applicants for federal surplus property, by not allowing Plaintiff to submit supplemental or clarifying information in support of its application to address concerns of HHS. Plaintiff further contends that Defendant HHS deprived Plaintiff of its procedural due process rights under the Fifth Amendment to the U.S. Constitution by failing to provide an appeal process to HHS's denial of Plaintiff's application.

8. The failure of HHS and GSA to follow the requirements of Title V of the McKinney Act has deprived Plaintiff the opportunity to acquire and use the Surplus Property to assist and benefit thousands of homeless families and individuals by providing supportive housing, shelter, employment, services and other supports on the property and such failure will cause serious and irreparable harm to Plaintiff and the thousands of homeless families and individuals it serves, or could serve, but for HHS and GSA's failure to comply with the law and regulations.

**FACTS**

9. The Denver Federal Center is an approximately 670 acre site owned and managed by the GSA in an area near 6th Avenue and Kipling Street surrounded by the city of Lakewood, Colorado. The Denver Federal Center provides office, warehouse, and other space for the benefit of 26 different federal agencies on the site. Included within this site is an approximately 59.049 acre portion of the site known as the Federal Center Station property situated in the northwestern corner of the Denver Federal Center (the "Surplus Property").

10. On September 23, 2016, HUD published in the Federal Register a notice that the Surplus Property (HUD No. 5401630010) was "unsuitable" for use as facilities to assist the homeless, citing environmental issues concerning the Surplus Property.

11. In May 2017, GSA listed the Surplus Property for public auction scheduled for July 25, 2017 on GSA's website.

12. The GSA Invitation for Bids on the Surplus Property (listed as IFB Number GSA-R-1849) included a number of documents, including environmental documents maintained by the Colorado Department of Public Health and Environment ("CDPHE"), a "Corrective Action Plan for Post Corrective Measures Operation and Maintenance of the Northwest Corner Landfill

Cover Formerly Part of the Denver Federal Center, Lakewood Colorado" ("CAP") required to be completed by the successful bidder for the development of the Surplus Property on areas determined by CDPHE and GSA by any future prospective purchaser of the Surplus Property.

13. Plaintiff filed a Complaint in the case *The Colorado Coalition for the Homeless v. General Services Administration and United States Department of Housing and Urban Development*, Civil Action No 17-cv-01797-WJM-KLM, seeking declaratory and injunctive relief against Defendants GSA and HUD based on their arbitrary and capricious decisions to determine the Surplus Property "unsuitable" for use to assist the homeless while auctioning the property to the general public with representations that the property was suitable for market rate residential and commercial uses.

14. Judge William J. Martinez issued a Temporary Restraining Order on July 26, 2017 preventing Defendant GSA from accepting any bid or otherwise disposing the Surplus Property to preserve Plaintiff's claim to acquire the property to assist the homeless pursuant to Title V of the McKinney Act. The Court's Temporary Restraining Order found that Plaintiff demonstrated a substantial likelihood of success on the merits under the Administrative Procedures Act in its claim that HUD's determination that the property was not suitable for use to assist the homeless due to environmental issues while GSA was auctioning the property as a transit oriented development for market rate uses, including residential uses, was arbitrary and capricious. The Court further found that Plaintiff would suffer irreparable injury if the GSA auction was permitted to conclude.

15. On October 6, 2017, HUD published a new suitability determination finding that the property was indeed suitable for use to assist the homeless, and notifying eligible entities that

homeless service providers would have 30 days from that date to notify HHS of their interest in the Surplus Property.

16.     On October 6, 2017, CCH submitted to HHS a Letter of Intent to submit an application to acquire the Surplus Property.

17.     On October 12, 2017, HHS acknowledged CCH's Letter of Intent to submit an application and provided an application package and instructions via email.  The instructions stated that "Applications are initially reviewed on the basis of four evaluation criteria: Services Offered, Need, Implementation Time, and Experience. If HHS determines that the applicant met those four evaluation criteria, the applicant is given forty-five (45) days to present a final application containing a reasonable financial plan for FRPAP's review and determination."

18.     The instructions further stated that "The applicant must complete all items of the application packet, excluding items 4.(B), 4(C), 4.(D), and 4(E), which pertain to the applicant's proposed financing plan, including funding sources."

19.     On December 21, 2017 Plaintiff submitted to HHS its initial application to acquire the Surplus Property.

20.     On December 29, 2017 HHS requested further information and clarification from Plaintiff to support Plaintiff's initial application regarding the criteria of Services Offered, Need, Implementation Time, and Experience.

21.     On January 12, 2018, Plaintiff submitted supplemental information and clarification as requested in the December 29, 2017 HHS letter.

22.     On January 23, 2018, HHS issued a letter determining that Plaintiff's initial application, as amended, was approved and requesting Plaintiff's completion by March 9, 2018 of

Application Items 4.(B), 4(C), 4.(D), and 4(E) related to the applicant's ability to finance the development and operation of the approved program of use.

23. On February 16, 2018, HHS provided to Plaintiff a letter dated February 14, 2018 from Defendant GSA "raising issues pertaining to the Colorado Coalition for the Homeless' (CCH) application for acquisition" of the Surplus Property, and requesting that CCH officially address GSA's concerns by submitting a response to HHS no later than April 1, 2018.

24. On March 9, 2018, Plaintiff submitted the additional Application Items 4B, 4C, 4D, and 4E related to its ability to finance the development and operation of the approved program. The application contained 28 documents totaling 210 pages documenting in detail the estimated costs for the construction and infrastructure needed to accomplish the HHS approved program to assist homeless, the estimated costs to operate the approved program, and the funding and revenue available to finance both the construction and operation of the approved program.

25. Plaintiff spent more than $79,000 on architectural, engineering and environmental consultants, received additional donated engineering services worth more than $25,000, and devoted more than $10,000 of staff time to complete applications to HHS to acquire the Surplus Property.

25. On March 22, 2018 Plaintiff submitted a detailed response to HHS and GSA addressing the "issues" raised by GSA in its February 14, 2018 letter.

26. Plaintiff's application to acquire the Surplus Property generated loud opposition from certain residents of Lakewood, as well as Lakewood City and Jefferson County officials, and resulted in multiple letters and communications to HHS requesting that HHS deny Plaintiff's

application, despite the fact that Title V provides no grounds for denial of an application based on opposition from governmental officials or community members.

27. On March 23, 2018 Plaintiff received a determination letter from HHS stating that "Based on our review, this Department has determined that the final application is **not approvable** because it failed to meet threshold requirements related to the CCH's ability to finance the development and operation of the approved program of use. More specifically, as detailed below, many aspects of the submitted financial plan are either incomplete or speculative and therefore fail to meet the requirements of 42 U.S.C. 11411(e)(4) and 45 C.F.R. 12a.9(b)(4)."

28. On March 26, 2018 GSA announced to Lakewood officials that it would restart its auction process for the Surplus Property on April 2, 2018.

29. On March 27, 2018 Plaintiff submitted via email a Request for Reconsideration Respecting the Denial Letter to HHS detailing a number of conclusions in the HHS determination letter Plaintiff found erroneous, arbitrary and capricious.

30. On April 2, 2018 GSA updated its website indicating that the auction would resume shortly.

31. On April 3, 2018 GSA began receiving bids on the Property. As of close of business on April 3, 2018, the high bid on the property was $6 million.

32. On April 3, 2018, HHS responded to Plaintiff's Request for Reconsideration of its denial of the application stating that "Neither 42 U.S.C. 11411 nor 45 C.F.R. 12a provide a basis to appeal the FRPAP's determination within this Department; accordingly, **there is no appeals procedure**. The **FRPAP's disapproval determination is final and no further consideration will be given** (emphasis added)."

**STANDING**

33.  The mission of the Colorado Coalition for the Homeless is to work collaboratively toward the prevention of homelessness and the creation of lasting solutions for homeless individuals and families throughout Colorado. In furtherance of its mission, since 1996, CCH has developed 18 housing and service facilities throughout Colorado to provide integrated health care and housing to more than 15,000 persons each year.

34.  Specifically, CCH has constructed 1,800 units of supportive and affordable housing for homeless families and individuals, including 220 apartments on the former Lowry Air Force Base in Denver, a former Department of Defense site disposed of around 1994 pursuant to Title V of the McKinney Act. CCH is an eligible entity under Title V of the McKinney Act and regulations to request the transfer of surplus federal property for use to assist the homeless, and CCH has the financial and management capacity to meet regulatory requirements for such use.

35.  The CCH strategic plan calls for "developing new housing opportunities meeting the needs of homeless and at-risk families and individuals" and "increased access to quality health care for homeless and at-risk individuals and families."

36.  CCH has annual revenue of more than $65 million and total net assets of more than $53 million.

37.  The Metro Denver area is in the midst of a severe affordable housing crisis, with a shortage of 31,000 housing units for households at or below 30% of Area Median Income in Denver alone.

38.  The lack of availability and price of vacant land for development of supportive housing, shelters and supportive service facilities is a significant limitation on the ability of CCH to meet

the growing needs of the homeless community in Jefferson County and throughout Metro Denver.

39. The most recent HUD required Point In Time count of the homeless conducted in January 2016 by the Metro Denver Homeless Initiative found that there were 5,467 homeless individual counted in the seven county Denver Metro area, including 439 in Jefferson County, where the Federal Center is located.

40. Given the significant resource that the GSA Surplus Property would provide to allow the development of supportive housing, health care, shelter and other services on the site to assist the homeless, CCH and its clients have a direct and significant interest in the proper disposition of the Surplus Property in accordance with the law and requirements of the McKinney Act. The failure of HHS and GSA to faithfully fulfill their requirements under Title V of the McKinney Act has created significant injury and harm to Plaintiff by preventing the use of the Surplus Property to provide needed housing, shelter and supportive services to thousands of homeless individuals in Jefferson County and Metro Denver.

## LEGAL BACKGROUND

41. Title V of the McKinney Act, 42 U.S.C. § 11301 *et seq.,* § 11411 et seq., requires that HUD canvass federal agencies on a quarterly basis requesting information from each landholding agency regarding federal real properties that are excess, surplus, underutilized, or unutilized.

42. Within thirty days of receiving information of available excess properties from landholding agencies, HUD is required to determine whether they are suitable to assist homeless persons, and notify the public of suitable and available properties. 42 U.S.C. § 11411(a).

43. Upon publication by HUD that a surplus property is available and suitable to assist the homeless, any representative of the homeless, including state, local government or private nonprofit organizations, interested in such property must send a written expression of interest within 60 days to HHS. 45 CFR § 12a.9(a)(1).

44. Upon receipt of an expression of interest, HHS will send an application packet to the interested entity. 24 CFR § 581.4 (f) (4). The application packet requires the applicant to provide certain information including 1) description of the applicant organization; 2) description of the property desired; 3) description of the proposed program; and 4) ability to finance and operate the proposed program.

45. Under 45 CFR § 12a.9(e)(1) "Evaluations. Upon receipt of an application, HHS will review it for completeness, and **if incomplete, may return it or ask the applicant to furnish any missing or additional required information prior to final evaluation of the application** (emphasis added)."

46. Under 45 CFR § 12a.9(e)(2) "Evaluations All applications will be reviewed on the basis of the following elements, which are listed in descending order of priority, except that paragraphs (e)(2)(iv) and (e)(2)(v) of this section are of equal importance:

   **(i)** *Services offered.* The extent and range of proposed services, such as meals, shelter, job training, and counseling.

   **(ii)** *Need.* The demand for the program and the degree to which the available property will be fully utilized.

   **(iii)** *Implementation Time.* The amount of time necessary for the proposed program to become operational.

    **(iv)** *Experience.* Demonstrated prior success in operating similar programs and recommendations attesting to that fact by Federal, State, and local authorities.

    **(v)** *Financial Ability.* The adequacy of funding that will likely be available to run the program fully and properly and to operate the facility.

47. In December 2016, Congress passed the Federal Assets Sale and Transfer Act of 2016, Public Law 114-287, (FAST Act), which among other things, changed the requirements related to demonstrating the ability to finance a public benefit conveyance such that an applicant must provide a "**reasonable plan to finance the approved program**."

48. The regulations at 45 C.F.R. 12a.9(b)(4) cited in HHS's denial determination have not been amended to reflect this change of standard in the FAST Act. Furthermore, the HHS Application has not been changed to provide specific guidance as to what HHS considers necessary for the application to demonstrate a "reasonable plan to finance the approved plan."

49. The regulations at 45 C.F.R. 12a. provide no role for the landholding agency GSA in the review or rebuttal of applications to acquire surplus property. Rather, under 45 CFR 12.3(a) "It is the policy of the Department to foster and a**ssure maximum utilization of surplus real property for public health purposes** (emphasis added)." These public health purposes include use of surplus property to assist the homeless.

50. 45 CFR 12a.12(b) provides that "Upon advice from HHS that all applications have been disapproved, or if no completed applications **or requests for extensions** have been received by HHS within 90 days from the date of the last expression of interest, disposal may proceed in accordance with applicable law."

51. HHS, GSA and other federal agencies are under a continuing Court Order from the U.S. District Court for the District of Columbia requiring, among other things, that "HHS must allow an intent to apply for Title IV funds to be sufficient to satisfy the homeless provider's financial showing requirement." *Paragraph 14, Order, National Law Center on Homeless and Poverty, et al., v. United States Veterans Administration, et al.,* 931 F. Supp. 2d 167 (D.C.C. 2013). This paragraph of the order was specifically retained by the Court in 2013. The Court further found that "Because the Court finds troubling indications of widespread noncompliance, it will DENY defendants' (the federal agencies) motion to vacate and will GRANT plaintiffs' motion to expand the Order." *Id.*

**FIRST CLAIM FOR RELIEF**

52. The preceding paragraphs are incorporated herein.

53. HHS has failed to fully fulfill its requirements under Title V of the McKinney Act and its implementing regulations under 45 CFR § 12a.9 et. seq.

54. HHS has acted arbitrarily and capriciously in determining that Plaintiff did not present a reasonable plan to finance the approved use of the Surplus Property to assist the homeless in violation of the Administrative Procedure Act, 5 U.S.C. § 702.

55. HHS has acted arbitrarily and capriciously in not allowing Plaintiff to **furnish any missing or additional required information prior to final evaluation of the application** as required under 45 CFR § 12a.9(e)(1).

56. HHS has acted arbitrarily and capriciously in not allowing Plaintiff to provide supplemental information to support its application and its documentation of a reasonable plan to

finance the approved use while affording other applicants for federal surplus property under Title V to do so.

57. GSA inappropriately inserted itself into the Title V application evaluation and review process by raising additional questions and issues regarding Plaintiff's application to acquire the Surplus Property in an apparent attempt to thwart the Congressional intent of Title V of the McKinney Act and federal regulation.

58. This Court is authorized under the Administrative Procedures Act to judicially review HHS's failure to properly review and approve Plaintiff's application for use to assist the homeless.

59. GSA's disposition of the Surplus Property through auction to the highest bidder will make the property unavailable for use to assist the homeless and create serious and irreparable harm to Plaintiff and its homeless clients.

### SECOND CLAIM FOR RELIEF

60. The preceding paragraphs are incorporated herein.

61. GSA has failed to fully fulfill its requirements under Title V of the McKinney Act and its implementing regulations under 45 CFR § 12a.9 et. seq.

62. GSA has acted arbitrarily and capriciously in immediately resuming the auction of the Surplus Property in violation of 45 CFR 12a.12(b) and in violation of the Administrative Procedure Act, 5 U.S.C. § 702 despite its knowledge that Plaintiff had requested additional review of the HHS denial of its application to acquire the property.

17

63. GSA inappropriately inserted itself into the Title V application review process by raising additional irrelevant and immaterial questions and issues regarding Plaintiff's application to acquire the Surplus Property, despite the fact that Title V and its implementing regulations provide no role for GSA in the review of such application, in an apparent attempt to thwart the Congressional intent of Title V of the McKinney Act and federal regulation.

64. GSA has acted arbitrarily and capriciously in suggesting in its letter to HHS raising concerns about Plaintiff's application that "Any development on the subject property will require some level of storm water controls to be put in place. **Any assumption that the current Denver Federal Center system has capacity to handle such water or that additional stormwater would be allowed, is false**".

65. GSA further acted arbitrarily and capriciously in its contention stating "As fee owner, GSA must approve any proposed utility easements prior to construction. Any such proposal would need to be determined in the best interest of the government and appropriate acquisition of such easement/agreement must be completed through Federal Regulations," suggesting that it might not be in the best interest of the government to allow Plaintiff to use the property to assist the homeless despite the requirements of Title V of the McKinney Act.

66. GSA further acted arbitrarily and capriciously in its contention in its letter to HHS that "There are no electrical or gas services 'within the Federal Center' that are available for development of this site. Since GSA remains the owner of the property in fee, any utility easement must be approved by the agency prior to construction", suggesting that GSA could deny Plaintiff the ability to use the Surplus Property by denying a utility easement to Plaintiff.

67. GSA's insertion into the application review process, and HHS's request for a response to GSA's concerns during the period for completing Plaintiff's final application required Plaintiff to divert attention and resources from completing the application in order to respond to GSA issues.

68. This Court is authorized under the Administrative Procedures Act to judicially review GSA's arbitrary and capricious insertion of itself into the application review process and to prematurely resume the auction of the Surplus Property.

67. GSA's disposition of the Surplus Property through auction to the highest bidder, or even acceptance of one of the bids, will make the property unavailable for use to assist the homeless and create serious and irreparable harm to Plaintiff and its homeless clients.

### THIRD CLAIM FOR RELIEF

68. The preceding paragraphs are incorporated herein.

69. HHS failed to provide Plaintiff an opportunity to appeal HHS's denial of Plaintiff's final application to acquire the Surplus Property in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

70. This Court is authorized to judicially review HHS's failure to provide appropriate due process to Plaintiff allowing Plaintiff to appeal the decision by HHS denying Plaintiff's application to use the Surplus Property to assist the homeless.

71. HHS's failure to provide Plaintiff an opportunity to appeal HHS's decision directly led to GSA's decision to dispose of the Surplus Property through auction to the highest bidder and will make the property unavailable for use to assist the homeless and create serious and irreparable harm to Plaintiff and its homeless clients.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enjoin GSA from selling the Surplus property or accepting any bids, or contractually obligating itself to dispose of the property, until HHS has fulfilled its legal requirements to determine Plaintiff's "ability to finance and operate the proposed program" in accordance with 45 CFR 12.9(b)(4) and whether it has provided a "reasonable plan to finance the approved program" in accordance with 42 USC §11411(e).

B. Require HHS to reevaluate the Plaintiff's ability to finance and operate the proposed program and determine that Plaintiff has provided "a reasonable plan to finance the approved program" taking into account all relevant information regarding the Plaintiff's financial capacity.

C. Grant Plaintiff such further and additional relief as the Court may deem just and proper.

Respectfully submitted this 30th day of April, 2018.

s/ John Andrew Parvensky
*Attorney*
2111 Champa Steet
Denver, CO 80205
Telephone: (303) 285-5204
E-mail: jp@coloradocoalition.org
Attorney for (Plaintiff) The Colorado Coalition for the Homeless